[No. 1196.]

BITTER v. THE MOUAT LUMBER AND INVESTMENT Co.

1. PRACTICE—PRESUMPTIONS.
Where the record on appeal is not a full and complete record, whatever presumptions are indulged in by the court of appeals will be such as to sustain the trial court.   In the absence of a complete record it will be presumed that an amended complaint was filed by permission of the court, in apt time and that defendant had an opportunity to plead thereto.

2. MECHANIC'S LIEN—STATEMENT.
Where a mechanic's lien statement showed that all the material for which the lien was claimed had been furnished prior to the making of the statement, the indebtedness had accrued and the words " to become due " used in the statement should be treated as surplusage.   Even if the debt had not matured by reason of credit having been extended for a time, this would not destroy the right of the creditor to secure himself by initiating a lien.

3. SAME.
A lien claimant can only be charged with knowledge of the ownership of property as apparent upon the public records.   A statement which alleged the ownership in a party shown by the records to be the owner although in fact he only held the property to secure a loan was sufficient.   And in a suit to enforce the lien, the true facts might be set forth in the complaint without fatal variance.

4. SAME.
A mechanic's lien statement which contains everything required by statute will not be avoided because it contains a statement or a

misstatement of something not required and not material. The requirement of the statute that a subcontractor on filing a lien statement shall give the name of the contractor to whom material was sold or work performed is for the benefit of the owner, and where a party named in the statement as the contractor was in fact the agent of the owner of the property and purchased the material as such agent, the owner could not be misled.

5. SAME—TIME WITHIN WHICH TO SUE—STATUTE.

The mechanic's lien law of 1893 expressly provided that it should not affect any existing rights either as to remedy or otherwise. Where all the material had been furnished and the indebtedness had accrued before the law of 1893 went into effect although no statement had been filed, the right to a lien had attached and would be governed by the law then in force as to the time within which suit must be commenced.

6. SAME—MORTGAGE LIEN—PARTY TO SUIT.

The holder of a mortgage lien on premises on which a mechanic's lien is sought to be established is not required to come in and make himself a party to the action in order to protect his mortgage lien. Such a lien is not affected by a failure of the holder to assert his rights within the time limited to a mechanic's lien claimant to institute his suit. And a failure to make a mortgagee a party to an action to enforce a mechanic's lien within the time limited for such suit is not prejudicial to the owner of the premises nor to the mortgagee when his lien is adjudged prior to the mechanic's lien.

7. SAME—NOTICE.

Only a subcontractor is required to serve notice and copy of mechanic's lien statement upon the owner, and where the decree found that plaintiff was a contractor such notice was not necessary. Such notice is not necessary to one who holds the land as a mortgagee.

8. PRACTICE.

Where there is no bill of exceptions and the allegations in the amended complaint are not denied a general finding that the facts set forth in the amended complaint are true, is sufficient to support the decree. It will be presumed that specific findings of fact were waived.

9. MECHANIC'S LIEN—STATEMENT—DECREE.

A mechanic's lien claimant may in his statement claim a lien on the improvements and the land on which situated, and in a suit to enforce such lien if it be found that there was a valid prior lien upon the land, the claimant may be allowed to enforce his lien against the building alone—by sale and removal thereof.

*Error to the County Court of Arapahoe County.*

Mr. HENRY B. O'REILLY, for plaintiff in error.

Messrs. DOUD & FOWLER, for defendants in error.

WILSON, J., delivered the opinion of the court.

This was an action to enforce a mechanic's lien. There being no bill of exceptions, we are restricted in our examination of the case to the record proper. For this reason, we can ascertain such facts only as are contained in the undisputed allegations of the pleadings. The history of the case presents some very unusual and irregular features. It is undisputed that the Mouat Lumber and Investment Company, which was plaintiff in the suit, furnished material for the erection of a dwelling-house upon a certain lot of ground situate in Arlington Park Addition, in Arapahoe county, Colorado, and that it was furnished at the instance of defendant John J. Bitter, whom plaintiff at the time believed to be the contractor for the erection of said building; that on July 5, 1893, plaintiff made and filed in the proper office a statement claiming a lien on the real estate and building for the amount of its bill for material so furnished. In this statement it was alleged that the owner of the property was defendant Frederick Smithlin, and defendant John J. Bitter was named as the contractor. The lien was claimed as a subcontractor. January 4, plaintiff instituted suit to enforce its lien, making as parties defendant John J. Bitter, Mrs. J. J. Bitter, Frederick Smithlin, E. E. Byron, John A. Thompson, N. P. Helberg, Nels Johnson, and Olaf Johnson. Mrs. J. J. Bitter was named as a defendant for the reason, as alleged by the complaint and nowhere denied, that at the time when the lien statement was filed the record title to the lot was in defendant Smithlin, but that in reality he was not, and Mrs. Bitter was the owner, the lot having been conveyed to Smithlin by her as security for a loan, which having been paid, the property had been reconveyed by him to Mrs. Bitter before the institution of the suit. Byron was made a defendant because it was alleged that he held a deed of trust upon the property. Defendants Helberg and the two

Johnsons were made parties because it was alleged upon information and belief that they were also lien claimants. No reference is made to John A. Thompson in the body of the complaint, and we are therefore not advised as to why he was made a party. The prayer of the complaint was for a personal judgment against John J. Bitter, and that the plaintiff be decreed to have a lien upon the real estate and the house thereon situate; or, in the event that the trust deed of Byron should be found to be a prior lien, that then plaintiff's lien be held to be prior to the trust deed upon the dwelling-house, and that it be sold to satisfy the lien, and the purchaser should have an order to remove the improvements so purchased by him. Service of process seems to have been had upon the two Bitters and upon Helberg only. On February 19, following, J. J. Bitter appeared and filed a demurrer to the complaint. On June 16, following, this demurrer was withdrawn, and leave given this defendant to answer. On November 15, following, defendant J. J. Bitter having failed to answer, judgment was rendered against him for the amount of the plaintiff's claim. This completes the history of the case so far as J. J. Bitter is concerned, he not having subsequently appeared.

On February 19, 1894, the same day on which J. J. Bitter filed his demurrer to the complaint, Mrs. J. J. Bitter filed an answer. In this she denied that she or defendant Smithlin ever at any time entered into a contract with defendant J. J. Bitter for the erection of the building in question, and that she or Smithlin owed J. J. Bitter any sum upon such, or any, contract. She also denied that plaintiff's lien was prior in point of time to defendant Byron's trust deed, and alleged that she was still indebted to Byron in the sum of about $2,000 on the loan secured by the trust deed. On February 7, 1894, defendant Helberg filed a cross-complaint in which he alleged that he, as the assignee of Thomas D. Hickey and W. Homer Childers claimed a lien on the house and lot whereon it was situate, for the sum due them under contract with J. J. Bitter as contractor for work and materials furnished.

On January 30, 1895, W. W. Dale, as trustee in the Byron deed of trust, entered his appearance. On February 7, 1895, all parties to the suit who had appeared being present by their counsel, the trial of the cause was commenced, and after a partial hearing of the evidence, the "further trial" was continued to the next day. On the following day, on the motion of W. W. Dale, it was ordered that the record be amended to read that he entered his appearance for himself, and also for E. E. Byron, the *cestui que trust*. On the same day, it was ordered by the court upon motion of plaintiff, that the summons in the cause be filed *nunc pro tunc* as of February 7, 1894.

The record as before us discloses no proceedings as to the further trial of the cause on that day. The next entry in the record is the filing of an amended complaint by plaintiff on February 15, 1895. In this complaint it was stated that the correct name of Mrs. Bitter was Louisa M. Bitter, and it was alleged that in reality Mrs. Bitter was not only the owner, but that she herself caused said building to be erected; that her husband, J. J. Bitter, was in truth and in fact acting as her agent in the purchase of the material from plaintiff, that he did not disclose his agency to plaintiff at the time of said purchase; and that plaintiff did not have knowledge of such fact until during the trial of the cause on the 8th day of February, 1895, preceding. In other respects the amended complaint was substantially the same as the original one in its averments. The prayer of the complaint was the same as in the original one, except that judgment was also asked against Mrs. Bitter. On May 2, 1895, at a term of the court succeeding that at which the amended complaint was filed, and during which the trial of February 7, had commenced, the record recites that " this cause having heretofore come on to be heard upon the amended complaint of the plaintiff, the answer of the defendants, and the cross complaint of H. P. Helberg," etc., and that " upon the trial the plaintiff being represented by Doud & Fowler its attorneys, and the defendants John J. Bitter and Lousia M. Bitter

being represented by their attorney H. B. O'Reilly * * * and the court having heard the evidence and the arguments of counsel, and being fully advised in the premises " a final decree was rendered by which plaintiff was adjudged to have a prior lien upon the building and improvements, and the same were ordered sold, it being found that the Byron deed of trust was a first lien upon the lot. It was further adjudged in this decree that the judgment theretofore rendered against J. J. Bitter be set aside, and held for naught.

On June 1, following, a motion on behalf of Mrs. Bitter for a new trial was denied.

On August 26, following, and at a term of court succeeding that in which judgment was rendered, Mrs. Bitter filed a motion to vacate the decree.

On November 9, at a succeeding term, upon hearing, this motion was also denied. Mrs Bitter thereupon brought the cause to this court upon writ of error. No other defendant complains.

There are numerous assignments of error, but this court is precluded from the consideration of many of them because no bill of exceptions is presented, and for the further reason that the certificate of the clerk attached to the transcript of record which is brought here, does not show it to be a complete transcript. The certificate is to the effect that the transcript is a true, perfect and complete copy only of certain pleadings, motions and record entries, being those designated in the præcipe therefor by plaintiff in error. If from a failure to present a full record or a bill of exceptions, this court is in any instance required to resort to presumptions, it will in all cases indulge in that which sustains the proceedings of the trial court. This rule is elementary and is universally sustained. Elliott, Appellate Procedure, 709–710 ; *The Sioux City Nursery, etc., Co. v. Carlton,* 2 Colo. App. 159 ; *Sears v. Andrews,* 1 Colo. 88 ; *German Natl. Bank v. Elwood,* 16 Colo. 247. Coming within this rule is the objection that no order was made authorizing the amended complaint to be filed, or allowing or requiring appellee to plead thereto.

In the absence of a complete record, we cannot presume other than that the amended complaint was filed with the permission of the court in apt time and upon proper application, and that plaintiff in error had the opportunity to plead thereto if she had so desired.

There are, however, a number of assignments of error which are properly before the court for consideratiom on the record as presented.

On various grounds, it is insisted that plaintiff's lien statement was fatally defective and void, and hence no lien was created. The first of such alleged defects pointed out is in the fourth clause of the lien statement, which in its entirety is as follows: "Fourth, That the total amount of indebtedness for which said lien is claimed, for the material furnished and labor performed, is two hundred ninety dollars and eighty-eight cents; that the aggregate amounts of the credits thereon is nothing and that the balance due and to become due the claimant is two hundred ninety dollars and eighty-eight cents."

It is suggested that the mechanic's lien law in force at the time a right to a lien accrued in this case did not permit the claim for a lien on account of work to be done or money to become due, and it is therefore urged that the insertion in this statement of the words "and to become due" renders it void. It is unnecessary to discuss the question as to whether counsel is correct in his contention as to the law then existing. From the language used in this and the preceding clause of the statement, no other conclusion can be possibly reached than that the material for which the lien was claimed had been furnished prior to the making of the statement. The language to that effect is clear and unmistakable. Hence the indebtedness had accrued, and the words "to become due" should be treated as surplusage. Even if the debt had not matured by reason of credit having been extended for a specific time, this would not, as is well known, have destroyed the right of the creditor to secure himself by initiating a lien.

It is further alleged as a fatal defect in the statement that

it declared Frederick Smithlin to be the owner of the lot and John J. Bitter to be the contractor for the building, whereas it was stated in the amended complaint that Mrs. Bitter was the sole owner and also her own contractor, and it was so found by the court as recited in the decree. It was alleged and not denied that at the time the material was furnished, Smithlin was the owner of the record title. The statement was therefore correct, although it subsequently appeared that he held it only as security for a loan, made to Mrs. Bitter, the real owner, to whom he reconveyed it prior to the institution of the suit. A lien claimant can only be charged with knowledge of the ownership of property as apparent upon the public records. He cannot be required to go behind that and ascertain whether a conveyance complete upon its face is burdened with some secret agreement to reconvey to the real owner. Moreover, this defendant who was the real owner, and who reaped the benefit from the material furnished by plaintiff, cannot be heard to complain of this in a court of equity. The statement was filed upon the theory and supposition that plaintiff was a subcontractor, and under the statute then in force it was required in such case to contain the name of the contractor. There was no such requirement where the contractor himself claimed the lien, and if there had been, the facts set forth would have necessarily disclosed it. Under the averments of the amended complaint, however, and the court so found, the sale of materials having been made to Mrs. Bitter, the owner, through her attorney in fact, the plaintiff was in reality an original instead of a subcontractor. In such case the statement that John J. Bitter was the contractor can be treated as if it had not been inserted. It was immaterial, the owner being herself the contractor for the building. It could be for the benefit of the owner only that a subcontractor was compelled to give the name of the contractor to whom he had sold materials, or for whom he had performed labor. If a lien claimant recites in his statement everything required by the statute, we know of no rule nor reason why he should lose his right

to a lien because he also stated therein, or misstated, some-
thing which was not required and was not material, es-
pecially if he was induced to do so by the conduct of the
authorized agent of the owner and contractor in failing to
disclose his agency. It is true that the defendant does not
appear to have personally made any representations whatever
to plaintiff, either as to the ownership of the premises, the
intended use of the material, or her relation to the construc-
tion of the building, but she is bound in this regard by the
statement and conduct of the agent who purchased the ma-
terial on her account and for her use and benefit. Even
though the agent himself did not intend to misrepresent or
mislead, a mistake of the plaintiff as to the name or identity
of the contractor would not, under the facts of this case,
have been material or have tended to defeat its lien state-
ment.

Counsel for the defendant also objects to the decree on the
ground that the suit was not commenced within the time
limited by statute. This would be fatal if true. In support
of this, he cites us to the fact that the lien statute of 1893
went into effect two days prior to the filing of the lien
statement herein, and six months prior to the institution of
the suit, whereas that act required suits to enforce liens to
be commenced within four months from the completion of
the structure. The act of 1893 expressly provided that it
should not affect "any existing right either as to remedy or
otherwise." This is very broad and sweeping in its terms,
and the case at bar clearly comes within the provisions of
this saving clause. All of the material had been furnished
by plaintiff on and prior to May 27, and the indebtedness
had then accrued. The right to a lien therefor upon com-
pliance with the statute existed, and was in full force more
than thirty days prior to the time when the new act went
into effect. The facts are entirely different from those in
Orman v. Crystal River Ry. Co., 5 Colo. App. 493. In that
the work was not completed, no indebtedness had accrued,
and hence no right to a lien had come into existence until

long after the new act was in full force. The court expressly stated in its opinion that it regarded this as a "controlling circumstance in the determination of the case." It was also said by the court, "It is quite possible, if the work had been finished prior to the time the act of 1893 went into operation and the right of action had accrued thereunder, a different question would have been presented."

The decree is attacked because it sought to adjudicate the rights of Byron, the holder of the deed of trust upon the lot, and Dale, the trustee, upon the ground that they had not come into court within the time limited by the lien act. We presume it is intended to claim that they should have come in within six months from the filing of the lien statement. We know of no statute which requires the holder of a mortgage or deed of trust to come into a proceeding of this kind at any time unless brought in as a party in order to maintain his lien. If the mechanic's lien claimant fails to make him a party, he does so at his peril. The lien of a mortgage or deed of trust cannot be affected by the failure of the holder to assert his rights within the time limited to a mechanic's lien claimant to institute his suit for enforcement of his lien. In any event, this defendant is not prejudiced by such error, if error it was, and neither is Byron himself, because his deed of trust was adjudged to be a lien superior to that of plaintiff.

It is contended that the complaint did not allege service of copy of the lien statement upon the owner, and that this being jurisdictional, the complaint does not support the decree. Only a subcontractor was required to serve this copy of notice. The decree found that plaintiff was a contractor, and therefore no service of copy of lien statement was necessary. No service of copy upon Smithlin was necessary as in reality he was not the real owner, but held the title only as mortgagee.

It is further urged that the findings of the court were not sufficient to support the decree. As appears from the record, there was a general finding that "the facts set forth in the

amended complaint are true." There does not appear from the record before us to have been any answer to the amended complaint. There were therefore, we must presume, no facts before the court except those stated in the amended complaint. Under the well settled rule that error is not to be presumed, but must be affirmatively shown, there being no bill of exceptions in this case, it will be presumed in aid of the judgment that the specific findings of fact were waived. *Mulcahy v. Glazier et al.*, 51 Cal. 626.

It is also assigned as error that the decree adjudged the plaintiff to have a lien upon the improvements upon the lot as separate and distinct from the lots on which they were situate, and directed their sale as provided by the statute, with power of removal by the purchaser; whereas the lien statement claimed a lien upon both real estate and improvements. The plaintiff was entitled under the statute to claim a lien upon the improvements and the lots whereon situate, but in case it was found that there was a valid prior lien, incumbrance or mortgage upon the land, the claimant was allowed to enforce his lien by sale and removal of the structure. This was simply an additional remedy given to the lien claimant in the happening of this contingency, and did not depend upon his claiming this right in his lien statement. In other words, the legislature simply said that although defendant has a lien upon the buildings and the ground whereon situate, yet if in its enforcement it is found that some one else has a prior lien or incumbrance upon the real estate, the right of the claimant to receive compensation for his labor shall not wholly fail, but he may sell the buildings upon which he expended labor or for which he furnished material, and the purchaser may remove them. This does not prejudice the right of a prior incumbrancer, because his full security still remains to him.

There are a number of other assignments of error, but this court cannot consider them for the reason that there being no bill of exceptions or complete record, it will be presumed that they are not well taken. We may add as to all of them,

that they are not such as prejudice this defendant or of which she has any right to complain.

There have been very many technical objections urged, but we feel less reluctance in strictly applying the rule that in the absence of a bill of exceptions and a complete record everything must be presumed in aid of the judgment, when it appears undisputed that plaintiff furnished the materials as claimed, and that this defendant was the owner of the property which received the full benefit thereof. The facts do not justify us to indulge in nice distinctions whereby a just debt might be defeated.

For these reasons, the judgment will be affirmed.

*Affirmed.*