## ROBINSON & PATTISON *v.* CALVIN GOINGS.

1. DAMAGES.  *For unlawful seizure and detention.  When may be punitive.*
   Punitive damages may be awarded for the unlawful seizure and detention of one's property, whereby he is prevented from the orderly prosecution of his business, since such wrong cannot be said to work only a nominal injury.

2. SAME.  *Partnership.  When firm liable for tort of one member.*
   And where in such case the property is seized by one member of a firm in the prosecution of the firm's business, the other members are equally liable at the suit of the owner of such property.

APPEAL from the Circuit Court of Tallahatchee County.
HON. A. T. ROANE, Judge.

This suit was instituted before a justice of the peace by Calvin Goings against Alexander Pattison and Jerry Robinson for one

hundred and fifty dollars as " Damages for taking forcible possession of plaintiff's wagon and team and three bales of cotton and throwing same off the wagon into warehouse of the defendants." Judgment by default for one hundred and fifty dollars was rendered against the defendants, who thereupon appealed to the circuit court.   Judgment was rendered against them in the circuit court for one hundred and twenty-five dollars, and they appealed to this court.

The plaintiff started his wagon, team, and driver with three bales of cotton to be delivered to one Roane Thayer. · When the wagon reached the store of Robinson & Pattison, Pattison, Robinson not being present, stopped the wagon, had the cotton thrown off and rolled into the shed of Robinson & Pattison, a firm consisting of the two defendants.    The driver at first refused to throw off the cotton, saying that his master directed him to deliver it to Thayer.    Pattison called to one Lucas to throw the cotton off, saying that he had a deed of trust on the cotton and· would hold it " until hell froze over."    Plaintiff, on the return of the driver about dark, started in search of the cotton and· rode nearly all night, the weather being very cold.    Plaintiff did not owe defendants anything, and the defendants had no lien or claim on the cotton.    The firm of Robinson & Pattison did have a deed of trust on all the cotton raised on the land leased by one Stanton to one Belcher, but the land cultivated by plaintiff, and on which the cotton in question was grown, was a separate tract from that leased to Belcher, though near to or adjoining it.    When plaintiff saw Pattison and explained to him where the cotton was grown he delivered it to Thayer, marked it for him, and the latter shipped it from Robinson & Pattison's shed, which was one mile nearer plaintiff's house than Thayer's store, and plaintiff was thereby saved one mile's hauling.    It was also shown that Robinson, on the morning on which the cotton was being carried to Thayer's, passed the wagon, and, after passing, stopped and wrote a note, which he sent to Pattison, who, on receiving it, expressed his thanks, and immediately went out and when next seen had taken charge of the wagon and cotton.    The only instruction given for the plain-

tiff was as follows : " If the jury believe, from the evidence, that the defendants seized the wagon and team of the plaintiff, and caused three bales of his cotton to be taken from the wagon and thrown into the shed of the defendants, and that such seizure was without right and authority of law, then the law is for the plaintiff; and if the jury further believe that said seizure was made in a reckless, insulting, or oppressive manner, then the jury may find damages for the plaintiff to any amount not exceeding the amount sued for."

*W. H. Fitzgerald,* for the appellants.

1. The verdict was not warranted by the evidence.    From the evidence a wrong had been perpetrated by Pattison against Goings, and the jury were warranted in finding a verdict against him because of the technical wrong, but not for exemplary damages. The suit was brought against Alex. Pattison and Jerry Robinson, and not the firm of Robinson & Pattison.   The judgment by default in the magistrate's court was against them individually, but in all of the proceedings of the circuit court, including the judgment, they were treated as the firm of Robinson & Pattison.

Against Robinson no verdict at all should have been found. He was in no way a participant in the wrong of his partner in trade, Pattison, but because he was such partner he was held equally liable.   The jury thought that the wrongful act of Pattison was within the scope of the partnership business, and that Robinson, therefore, was equally to blame, or it may be they conjectured that the note sent by the witness Walter to Pattison contained directions or advice to Pattison to take the cotton, but that was the merest conjecture.

2. I submit that the conduct of Pattison evidenced no malice, recklessness, oppression, or outrage, and that the taking of the cotton was not attended with insult to any one.   When the driver heard Pattison say he had a deed of trust upon the cotton and intended to hold it until "hell froze over," he did not insist upon carrying it to Thayer's, and aided Lucas in throwing off the cotton.   There is no evidence of his having been *compelled* to do this.   No deed of trust was introduced, but it was shown there was a deed of

trust in favor of Robinson & Pattison.  Pattison very evidently acted upon the belief that he had a right to the cotton by virtue of the deed of trust, and took it, as any man would have done under the circumstances.  He committed no breach of the peace, was guilty of no fraud, and inflicted no real damage upon any one.

The evidence shows that the only object Pattison had was to take into his possession and safely keep the cotton, that he was not actuated by fraud or malice, and that what he did was not reckless in contemplation of law.    Not only no evidence has been adduced tending to prove that appellee sustained any real damage by the taking of the cotton by Pattison, but it has been abundantly proven by appellee's witnesses that he was really benefited.    The jury could not have come to the conclusion, therefore, that appellee was entitled to compensatory damages.  The affirmative proof of benefit effectually and necessarily excluded the idea of actual damage.    They had a right to return a verdict of nominal damages, but that was the extent of their legal power, even if they were satisfied in their own minds from the evidence that the defendant, Pattison, did the taking recklessly or was actuated by malice and fraud, and was insulting, etc., because they could not award punitory damages, unless the evidence showed real injury to appellee. 1 Sutherland on Dam. 748, and authorities cited.  Hence the instructions given by the court at the request of appellee was error.

*W. S. Eskridge,* for the appellee.

1.  The testimony in this case, it is submitted, abundantly justified the verdict and judgment rendered in the court below.   It is a case of inexcusable and unmitigated wrong and outrage.    There can be, in no view of the testimony, any palliation for the conduct of the defendants in the court below.

A citizen, and, from the testimony, a good and orderly and debt-paying one, starts his wagon and team with three bales of cotton, to be delivered to Mr. Thayer, a merchant, in payment of a debt due him.  While in transit, Mr. Pattison, one of the defendants, by force stops the wagon, makes the driver follow him, he walking in front, to the shed of the defendants, and there directs the driver to throw the cotton off and roll it into the shed ; this the driver re-

fuses to do. Pattison then directs the witness, Elijah Lucas, to do it, who does do it. Here is a forcible seizure and appropriation of the property of another, without right or color of right.

The instruction given for the plaintiff by the circuit judge propounded the law correctly. Whenever there is an unlawful invasion of another's right the law implies damage. See Cooley on Torts 62 and 63, *et seq.;* 1 Hilliard on Torts, p. 74, § 6 ; Sutherland on Damages 2 and 9.

The instruction also directed the jury that if they believed the seizure of the property of the plaintiff by the defendant was without right, and done in a reckless, insulting manner, then they might find damages to the extent of the amount sued for. This propounded the law correctly. See Sutherland on Damages 71, 736. See *Bell* v. *Morrison*, 5 C. 68 ; *Storm* v. *Green*, 51 Miss. 103 ; *M. & C. R. R.* v. *Green*, 52 Miss. 779 ; *N. O., etc., R. R.* v. *Burke*, 53 Miss. 201.

2. That the defendant Robinson was a party to this conduct, and that it was done at his instance and by his direction, the jury were fully justified in believing.

COOPER, C. J., delivered the opinion of the court.

The facts of this case warranted the jury in the infliction of punitive damages. Whether such damages may be awarded where there is only a nominal injury inflicted on the plaintiff it is not necessary to decide, since the evidence discloses a real injury, though uncertain in extent. One in the orderly and lawful prosecution of his business cannot be said to be only nominally injured by the unwarranted and illegal seizure and detention of his property by another, so as to interrupt the course of business of the owner. Pattison acted in the matter as the agent of the firm ; it was in the prosecution of the firm's business and under claim of title for the firm that he seized the cotton and placed it in their warehouse. Under these circumstances Robinson, even though he personally took no part in the illegal act, was equally liable at the suit of the owner. Story on Part. 166, 168 ; Cooley on Torts 150 ; Parsons on Part. n., 150 ; *Castle* v. *Bullard*, 23 How. (U. S.)

172; *Lothrop* v. *Adams*, 133 Mass. 471; *Lock* v. *Stearns*, 1 Metc. 560; *White* v. *Sawyer*, 16 Gray 586; *Chester* v. *Dickerson*, 54 N. Y. 1; *Guillou* v. *Peterson*, 89 Penna. St. 163.

*Judgment affirmed.*