[No. 5006.]
[No. 2555 C. A.]

McConathy et al. v. Deck.

1.  **Damages—Exemplary and Actual—Judgments.**

Where actual damages are shown in an action it is not necessary that the amount or money value of such actual damages be found in order to sustain a judgment for exemplary damages.

2.  **Exemplary Damages—Assault.**

In an action for damages where the evidence shows that plaintiff, a sick man, was arrested by defendants under a warrant and in so doing that they maliciously and unnecessarily subjected plaintiff to indignities, violence and mental and physical suffering, and in disobedience of the mandate of the warrant threw him in jail, in consequence of which treatment plaintiff was made so ill as to be confined to his bed for several days, the facts were sufficient to sustain a judgment for exemplary damages although there was no finding of the amount or money value of the actual damages.

3.  **Unlawfully Carrying Concealed Weapon — Forfeiture of Weapon.**

Under section 1364, 3 Mills' Ann. Stats., providing that all concealed weapons taken from parties carrying the same in violation of the statute shall be forfeited to the county, it is not necessary that the party from whom such weapon is taken should be convicted of the crime of unlawfully carrying concealed weapons before such weapon becomes forfeited, but it

becomes forfeited immediately upon being taken, and in an action by such party against a sheriff to recover a pistol taken from him the sheriff may show in defense that the pistol at the time it was taken was being carried concealed upon plaintiff's person in violation of the statute, although no criminal charge was preferred against plaintiff for unlawfullly carrying concealed weapons.

*Appeal from the District Court of Hinsdale County: Hon. Theron Stevens, Judge.*

Mr. Charles F. Repath, for appellants.

Mr. H. C. Clay, for appellee.

Mr. Justice Gunter delivered the opinion of the court.

This was an action by appellee (Deck) to recover of appellants (McConathy and Smeltzer) damages for an alleged assault upon appellee; also to recover certain personal property, taken from the person of appellee, or its value. The complaint contained two causes of action. The first stated the facts constituting the alleged assault, the second the facts showing the plaintiff (appellee) entitled to recover a certain pistol and a certain knife, or their respective value. After issue joined, the case was tried to the court sitting without a jury.

1. As to the first cause of action, that to recover damages for an assault, the court found that appellants, as sheriff and deputy, acting under a warrant, arrested appellee; that in so doing they maliciously and unnecessarily subjected him to indignities, to violence, and to mental and physical suffering, and that in disobedience of the mandate of the warrant they threw him into the common jail, and that for such trespass appellee (Deck) was entitled to recover exemplary damages in the sum of $500. Judgment went accordingly.

The amount of the actual damage sustained by appellee was not found. The court did find, however, facts showing that appellee sustained actual damage, and the undisputed facts show that he received such damage; for example, the evidence shows that in consequence of the rough treatment to which the court found appellee was unnecessarily subjected by appellants he was rendered so ill as to be confined to his bed for several days, suffering in consequence mental and physical pain and loss of time.

It is said the failure to find the amount of such actual damage is fatal to the judgment. This contention is an attempt to apply the rule announced by some of the authorities that exemplary damages can be awarded only when actual damages have been sustained; that is, "exemplary damages can never constitute the basis of a cause of action." It is unnecessary for us in this case to express an opinion as to whether such rule is the law in this jurisdiction, because the facts of the case do not bring it within such view of the law. As stated, the finding, and the undisputed facts, show that the arrest here was attended by unnecessarily rough treatment of a frail sick man, his confinement in a cold jail, and consequent illness and loss of time. The finding was to the effect that appellants were trespassers *ab initio* in making the arrest and casting appellee into prison, and that appellee had sustained real injury therefrom.

The authorities are, that if actual damage is shown, even though its amount is not shown, or found, and the other elements entitling the plaintiff to exemplary damages are present, exemplary damages may be awarded; in other words, after actual damage is shown, it is unnecessary to show its money extent to sustain a judgment for exemplary damages.

We think the reasoning in *Williams v. Williams,* 20 Colo. 51, 67, is authority for this conclusion. That action was by the wife to recover damages for alienation of the husband's affections. The action arose after the enactment of our exemplary damage act. —1 Mills' Ann. Stats., sec. 1512. The court was of the opinion that the injury complained of was within the statute, because it was an actionable wrong, although unattended by bodily injury or pecuniary losses. *Inter alia* the court said:

"Such injury is a wrong done to the wife as an individual—as a person. The statute does not specify that the wrong shall be a physical or bodily injury. On the contrary, it allows exemplary damages when 'the injury complained of shall be attended by circumstances of fraud, malice or insult, or a wanton and reckless disregard of the injured party's rights and feelings.' These words clearly import wrongs and injuries other than mere bodily wounds or pecuniary losses. They include as well injuries affecting the mind and sensibilities of the individual, which are often more grievous and painful than mere material injuries."

In *Favorite v. Cottrill,* 62 Mo. App. 119, 123, plaintiff sued for the destruction of his business as a billposter. The jury returned a verdict of $1 as compensatory damages and $5,000 as exemplary damages. A remittitur was made in the trial court, and judgment entered for $2,499. The evidence showed substantial damages, but on account of a defect in the pleadings the court excluded it from the consideration of the jury and charged that the recovery of compensatory damages could not exceed a nominal sum, and that exemplary damages might be awarded. Exemplary damages were awarded. The point was made on appeal that the instruction as to exemplary damages was error, because it permitted nominal

damages to constitute the basis of exemplary damages. The court, after adverting to the conflict of authority upon this question, held that the judgment should stand, and *inter alia* said:

"Here the injury inflicted was not theoretical or fanciful, but quite substantial, and the plaintiff was only precluded from recovering substantial damages because of the state of the pleadings. We will therefore overrule the assignment."

In *Robinson & Pattison v. Goings,* 63 Miss. 500, 504, Goings sued to recover damages for taking forcible possession of his wagon and team and three bales of cotton. The evidence showed that plaintiff started his wagon loaded with three bales of cotton for delivery to a third party. When the wagon reached the store of defendants it was stopped, the cotton forcibly thrown off and rolled into their shed. The driver returned to the home of plaintiff with his wagon and team. Later the cotton was delivered by the defendants to the third party upon the order of plaintiff. The evidence did not show actual damage to plaintiff in any particular sum. Plaintiff was awarded punitive damages in the sum of $125. It was contended that the facts did not justify an award of punitive damages, because there was only a nominal injury to plaintiff. The court held that although the extent of the injury was uncertain, it was a real injury, and was a basis for punitive damages. In the course of the opinion it said:

"One in the orderly and lawful prosecution of his business cannot be said to be only nominally injured by the unwarranted and illegal seizure and detention of his property by another, so as to interrupt the course of business of the owner."

In the case before us the finding of the court and the undisputed evidence shows that appellee sustained actual damage, although the money extent

30

thereof was not found. The finding further was, that such damage was inflicted under circumstances justifying the award of exemplary damages, and exemplary damages were awarded. ·

We think the judgment on the first ground of action, awarding $500 as exemplary damages, should stand.

2. The second cause of action was to recover of appellants the value of a pistol and knife taken from the person of appellee at the time of the arrest mentioned in the first cause of action. The pistol was found to be of the value of $16 and the knife of the value of $1, and judgment went for $17 on the second cause of action in favor of appellee and against appellants.

The evidence, without conflict, showed that the pistol at the time of the seizure was being carried by appellee in violation of the statute against carrying concealed weapons.—3 Mills' Ann. Stats., sec. 1364. There was no criminal charge preferred against appellee for carrying concealed weapons, and it is not claimed that the pistol was being held to be used as evidence upon the trial of such charge.

Appellants contend that as to this cause of action the judgment was wrong because under the undisputed facts the pistol was taken from the person of appellee while carrying it in violation of the statute against carrying concealed weapons, and that the mere occurrence of such facts divested appellee of his title and worked a forfeiture of his interest in the pistol in favor of the county.

Appellee contends that a judicial proceeding establishing a violation of the statute, as the conviction of appellee of the crime of carrying concealed weapons, was necessary to work the forfeiture; that as there had not been such conviction, the ownership of the pistol was still in appellee.

Decisive of the contention of the respective parties is, was a conviction in a criminal proceeding for carrying concealed weapons necessary to work the forfeiture, or can the fact of a violation of the statute be availed of if established by other evidence than a judgment of conviction? The statute prescribes:

"If any person * * * shall within any city * * * carry concealed upon his * * * person any pistol * * * such person shall upon conviction thereof * * * be punished by imprisonment in the county jail * * * or by a fine * * * or by both such fine and imprisonment * * * . All concealed weapons taken from parties violating this section shall be forfeited to the county and confiscated and sold at auction for the benefit of the school fund of the county in which the offense is committed."

This section in effect says that any pistol taken from any party carrying it concealed upon his person within any city shall be forfeited to the county and confiscated and sold at auction for the benefit of the school fund of the county in which the offense is committed.

This statute by its terms makes the occurrence of the facts constituting its violation work a forfeiture; it does not make the forfeiture dependent upon a conviction. To construe the statute as requiring a conviction as a condition precedent to a forfeiture thereunder would be to supply a provision it has not.

The question before us is not a new one. In Am. & Eng. Ency. of Law (2d ed.), vol. 13, p. 58, it is said:

"While a forfeiture at common law does not operate to divest the title of the owner until by a proper judgment in a suit instituted for that purpose the rights of the state have been established, it is otherwise where a statute in terms denounces a forfeiture of the property as the penalty for a violation of law, without alternative value or other qualifica-

tions or provisions, or language showing a different intent; for in such case the forfeiture takes place absolutely and instantaneously on the commission of the offense or at such other time and upon such other conditions as the statute may name.''

*Wilkins v. Despard*, 5 Dunford & East Reports (5 Term Reports) 65, was trespass by an owner against the governor of a foreign country belonging to Great Britain for seizing and selling his sloop. The defense was, that the owner's title was divested by a forfeiture to the defendant and the crown through a violation, by the owner, of the navigation act. Under the provisions of that act, if the facts existed set up in the answer, the sloop and its cargo became forfeited to the crown and the defendant. It was contended by the owner that the existence of the facts constituting a violation of the navigation act ''without any sentence of condemnation of the said cargo and the said sloop * * * being rendered by any court having competent jurisdiction in that behalf would not work a forfeiture.'' The court held that the violation of the act worked the forfeiture, and that the violation could be shown as any other fact, and that a previous judicial determination of a violation of the statute was not necessary to its operating to effect a forfeiture.

*Fontaine v. The Phoenix Insurance Company*, 11 Johnson 292, was an action on a policy of insurance covering the schooner Phœnix. The vessel was practically lost. A question was, whether the plaintiff at the time of the loss had an insurable interest in the vessel. The defense was that the title to the schooner had been forfeited to the United States prior to her loss for a violation of the exclusion act, and that her title was in the United States under such forfeiture at the time of the loss. The sixth section of that act provides that any vessel receiving cargo

in violation of that act shall be forfeited to the United States. It was contended that a proceeding in, condemnation or some other judicial proceeding was necessary to determine that there had been a violation of that act, and that the facts without a judicial determination of their existence, and that they amounted to a violation of the act, would not work a forfeiture. The court held that the mere existence of the facts operated as a forfeiture, and that a previous judicial determination that such facts constituted a violation of the statute was not a condition precedent to their operating to divest the title of the former owner. The court approves *Wilkins v. Despard, supra,* and in speaking of the ruling there says: ''It is decided that if a ship be seized as forfeited under the navigation act, the owner cannot maintain trespass against the party seizing, although the latter does not proceed to condemnation; for by the forfeiture the property is divested out of the owner.''

*Kennedy v. Strong,* 14 Johnson 127, was an action of trover for certain merchandise. The defendant, a shipowner, who had converted the merchandise, set up that the same had been shipped in violation of the exclusion act, and that therefore the title to it had been forfeited to the United States. The plaintiff contended that the shipment of the goods in violation of the act did not without a judgment establishing such violation divest his title. The court held that a judgment by condemnation, or otherwise, establishing such violation was not necessary to the facts constituting the violation operating as a forfeiture. In the course of its opinion the court said: ''That point has been settled in this court and in the supreme court of the United States. The forfeiture takes place on the commission of the act prohibited, and by the forfeiture the property is immediately divested out of the owner, before any seizure or suit.''

In *Bennett v. American Art Union,* 5 Sanford Reports 614, 631, plaintiff in effect a subscriber of the art union, a corporation, sought an injunction to restrain the distribution by lot of certain works of art which that corporation had purchased. One ground for the court's denying the writ of injunction was that the plaintiff had no interest in the property, because the title of the company to the property had become forfeited to the state through a violation of the statute. The court among other things said:

"It was so vested by the force of the forfeiture which the statute declares, of 'all property that shall be offered for sale or distribution contrary to its provisions'—a forfeiture which, by the express words of the law, may attach as well before as after the determination of the chance upon which the distribution depends. It has, indeed, been insisted by the counsel for the plaintiff that the forfeiture which the statute creates, whatever may be its effect by relation, does not attach, so as to divest the title of the owner, until by a proper judgment in a suit instituted for that purpose the rights of the state have been established; but although it is undoubtedly true that a forfeiture at common law does not operate to change the property until some legal step has been taken by the government for the assertion of its rights, there is a material distinction between a common law and a statutory forfeiture, to which the learned counsel failed to avert. When a forfeiture is given by statute the rules of the common law are dispensed with, and the thing forfeited may either vest immediately or upon the performance of some future act according to the will of the legislature. This depends entirely upon the construction of the statute. * * * There are many decisions in England and in the United States which establish that where by the words of the statute a forfeiture is attached to the commission

of the offense, its immediate operation is to divest wholly the title of the owner, so as to deprive him of the right of maintaining an action or defense, to which, as owner, he would otherwise be entitled.''

*Oakland R. R. Company v. Oakland Fruit Valley Railway Company,* 45 Cal. 365, and *Borland v. Lewis,* 43 Cal. 569, also support the conclusion we have reached. In the course of its opinion in the former case the court used the following language: ''Now while a forfeiture at common law does not operate to divest the title of the owner until by a proper judgment in a suit instituted for that purpose the rights of the state have been established, it is otherwise when the forfeiture is declared by a statute. In the latter case the title to the thing forfeited immediately vests in the state upon the commission of the offense or happening of the event for which the forfeiture is declared, or at such other time and upon such other condition as the statute may name.  *  *  *  In some of the cases the question has been directly presented whether, after the forfeiture has taken place, but in the absence of any judgment declaring the forfeiture, the former owner could maintain any action in reference to the forfeited property, and it was held that he could not.''

In the latter case the provisions of the statute declaring a forfeiture upon the existence of certain facts was availed of by defendant in an ejectment case.

See also *United States v. Bags of Coffee,* 8 Cranch. 398.

The statute under consideration divides into two parts, the one providing that *upon conviction* the defendant shall be fined, or imprisoned, or both; the other complete in itself, saying that a *violation* of the statute shall work a forfeiture. We repeat, it is not provided that this violation, to be effective, shall be

established in any particular manner; the provision simply is, that if the violation exists it will work a forfeiture. It has been shown in this case that there was a violation of the statute; its effect, then, according to the terms of the statute, was to divest the title of the pistol from the former owner and invest it in the county. We think the judgment for the return of the pistol, or its value, should have been for appellants (the defendants). As to the knife, the evidence has not shown that it was within the statute.

The judgment below will be affirmed as to the first cause of action and reversed as to the second.

Judgment affirmed in part, and reversed in part.

Chief Justice Gabbert and Mr. Justice Maxwell concur.